AO 106 (Rev. 04/10) Application for a Search Warrant                                             Kelley

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A blue iPhone with clear blue case currently located at the ATF Columbus I Field Office, 230 West Street, Suite 300, Columbus, Ohio 43215 | )<br>)<br>)   Case No.   2:23-mj-137<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
A blue iPhone with clear blue case currently located at the ATF Columbus I Field Office, 230 West Street, Suite 300, Columbus, Ohio 43215

located in the     Southern     District of     Ohio    , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment A to the Affidavit submitted in support of the Application for this warrant.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    ☑ evidence of a crime;

    ☑ contraband, fruits of crime, or other items illegally possessed;

    ☑ property designed for use, intended for use, or used in committing a crime;

    ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 USC § 922(g)(1) | Felon in Possession of a Firearm |
| Title 21 USC § 841(a)(1) | Possession With Intent to Distribute Narcotics |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

    ☑ Continued on the attached sheet.

    ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Janna Penfield, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/6/2023

Chelsey M. Vascura
United States Magistrate Judge
*Judge's signature*

City and state: Columbus, Ohio

Chelsey M. Vascura, U.S. Magistrate Judge
*Printed name and title*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE FOLLOWING IPHONE: BLUE IPHONE WITH CLEAR BLUE CASE, INCLUDING ANY REMOVABLE STORAGE MEDIA CONTAINED WITHIN THE PHONES, CURRENTLY LOCATED AT ATF COLUMBUS I FIELD OFFICE, 230 WEST STREET, SUITE 300, COLUMBUS, OHIO 43215. | Case No. 2:23-mj-137 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Janna Penfield, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property described herein—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in further detail in Attachment A.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since in August 2018. Prior to becoming a Special Agent with ATF, I was a United States Probation Officer with the United States Probation Department through the Southern District of Ohio from October 2014 through January 2018. Additionally, from August 2007 through October 2014, I was a Parole Officer through the State of Ohio, which included a special assignment position with the United States Marshal Service as a Task Force Officer on the Southern Ohio Fugitive Apprehension Strike Team. I have completed the

Federal Criminal Investigator Training Program and the ATF Special Agent Basic Training at the Federal Law Enforcement Training Center in Glynco, Georgia. I have also completed the Initial Pretrial and Probation Training Program at the Federal Law Enforcement Training Center in Charleston, South Carolina, and the State of Ohio Parole Academy in Columbus, Ohio. In addition to the firearms, arson, and explosives related training received in these courses, I have also conducted and participated in investigations involving firearms and narcotics. Further, I have conducted investigations utilizing cellular telephone data, including but not limited to precision locates, cell-site activation information as well as reviewing call detail information.

3. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. I did not, however withhold any information or evidence that would negate probable cause.

4. Based on the facts set forth in this Affidavit, there is probable cause to believe that Sharod Radell BOWERS, (hereinafter "BOWERS") has violated the following federal laws: Title 18, United States Code Section 922(g)(1), Felon in Possession of a Firearm and Title 21, United States Code Section 841(a)(1), Possession With Intent to Distribute Controlled Substances. These offenses are referred to throughout as the TARGET OFFENSES. As explained within, there is probable cause to search the cellular telephone device identified below for evidence of the TARGET OFFENSES as described in Attachment A.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

5. The property to be searched is a blue Apple iPhone with a clear blue case, including any removable storage media contained within the phone, (hereinafter "the **TARGET**

**TELEPHONE"**). The **TARGET TELEPHONE** is currently located at the ATF Columbus I Field Office, 230 West Street, Suite 300, Columbus, Ohio 43215. As explained below, the **TARGET TELEPHONE** was recovered from the residence of 2983 Watermill Street, Building 9, Apartment #204, Columbus, Ohio during the execution of a federal search warrant. Additionally, this is the same residence where BOWERS was arrested on a Federal Arrest Warrant after BOWERS was charged with a Supervised Release Violation on February 17, 2023, for violating the terms of his supervised release in reference to a prior conviction for Felon in Possession of a Firearm and a warrant was issued for his arrest.

6. The applied-for warrant would authorize the forensic examination of the **TARGET TELEPHONE** for the purpose of identifying electronically stored data particularly described in Attachment A.

## PROBABLE CAUSE

7. On February 13, 2023, Officers with the Reynoldsburg Police Department (RPD) were dispatched to 7113 Marlan Circle, Reynoldsburg, Ohio on a report of shots fired. Dispatch advised that three gun shots were heard and people were arguing about a gun. Upon arrival, Officers observed a spent shell casing in the parking lot directly north of 7113 Marlan Circle. Follow up information from Dispatch advised a second caller stated they observed two black males arguing get into a black Sports Utility Vehicle (SUV), possibly a GMC.

8. Officers with RPD made contact with the original caller who advised he/she heard arguing in the breezeway outside his/her apartment door. The caller further stated he/she could hear male and female voices in the breezeway and then heard a female voice calmly say "put the gun away." The caller noted that one female voice could be heard calling the individual with the firearm a "bitch". The caller stated the voices appeared to have traveled North of the apartment

3

building right before he/she heard the shots fired. The caller then took cover in his/her apartment.

9. While conducting an area search for additional shell casings, a female exited 7113 Marlan Circle and advised RPD she knew what happened. The female, later identified as Ebony Thompson, informed the Officers that she and some friends were drinking at Donericks Pub House on Broad Street where she met up with Markuita Colts and Colts' boyfriend (later identified as BOWERS). After leaving the Pub, the group returned to 7113 Marlan Circle and a physical altercation began between Colts and BOWERS inside his black Ford Explorer, which was parked in the parking lot north of 7113 Marlan Circle, and described to have "bitch" carved into the side. E. Thompson stated that she told Colts to come inside with the baby she had with her. E. Thompson further clarified that the argument between Colts and BOWERS started as a verbal argument because Colts wanted to stay with E. Thompson and BOWERS was angry about that. BOWERS temporarily left prior to returning to E. Thompson's when the altercation escalated. E. Thompson advised her sister, Shampayne Thompson, proceeded to get involved in the dispute between Colts and BOWERS. E. Thompson then described when S. Thompson got involved BOWERS choked her (S. Thompson) and hit her. E. Thompson stated BOWERS pulled out a black handgun with an extended magazine and pointed the weapon at her and her family/friend. BOWERS then fired the handgun, but the direction the round was fired is unknown. Upon hearing the shots fired, S. Thompson started to run back to the apartment to get away. E. Thompson informed Officers that Colts had visible injuries to her face from the physical altercation between her and BOWERS. By the time the Officers arrived on scene, BOWERS and any referenced firearms were no longer present.

10. A follow up interview was conducted with S. Thompson, who confirmed being choked and hit by BOWERS. S. Thompson admitted to the Officers that she hit BOWERS back.

The Officers were able to observe a visible scratch on S. Thompson's neck. S. Thompson also explained BOWERS pulled a handgun from his vehicle and pointed it at her. S. Thompson further advised BOWERS put the gun down, on top of his car, to fight BOWERS and then pulled a second firearm with an extended magazine from his back waistband. S. Thompson described BOWERS began waiving the second firearm at her saying he would kill her.

11. Lastly, E. Thompson provided RPD with a physical description of BOWERS and the telephone number she has for BOWERS, which was confirmed as the TARGET CELLPHONE. E. Thompson reported that she knows BOWERS has been to prison for murder.

12. Based upon the aforementioned information, BOWERS was charged with Having Weapons While Under Disability in Franklin County Municipal Court, Docket Number 2023CRA2278. It should be noted that Sharod BOWERS has prior convictions on May 20, 2015 and February 21, 2020, in the United States District Court for the Southern District of Ohio for Unlawful Possession of a Firearm in violation of Title 18 United States Code Section 922(g)(1), Docket Numbers 2:14CR252 and 2:20CR33. These convictions prohibit BOWERS from possessing firearms and/or ammunition. On June 17, 2022, BOWERS began a term of supervised released violation in the United States District Court for the Southern District of Ohio. At this time, BOWERS remained on supervised release.

13. On February 13, 2023, an active warrant was issued for BOWERS' arrest. Additionally, on February 17, 2023, BOWERS was charged with a Supervised Release Violation for violating the terms of his supervised release in reference to the federal conviction mentioned in paragraph 14 of the Affidavit, and a warrant was issued for his arrest.

14. On February 21, 2023, a search warrant for the GPS location and pen register/ trap and trace for the telephone number 614-288-5583 (the known telephone number for

5

BOWERS) was signed by the United States Magistrate Judge Chelsey M. Vascura in the Southern District of Ohio (Docket # 2:23MJ107). Therefore, investigators completed a CALEA Request Form to Sprint and started obtaining the GPS location of the telephone number as requested in the warrant. Shortly thereafter, investigators began receiving the data information on this telephone number.

15. Additionally, on February 24, 2023, a search warrant for the use of a Cell Site Simulator for the telephone number 614-288-5583 was signed by the United States Magistrate Judge Chelsey M. Vascura in the Southern District of Ohio (Docket #2:23MJ124).

16. On February 27, 2023, S/A Penfield along with other investigators began conducting mobile and electronic surveillance of the GPS location for BOWERS telephone. Upon confirming the GPS location of BOWERS phone at the residence of 816 Seymour Avenue, Columbus, Ohio, S/A Penfield observed a dark colored Chevrolet Malibu, bearing Ohio license plate MRSBWRS, parked in front of the residence. Investigators are aware this vehicle is registered to Halley Lyons-Bowers, who is the wife of BOWERS. Surveillance was terminated at that time.

17. On February 28, 2023, S/A Penfield, along with the United States Marshals Service (USMS) began conducting surveillance of the GPS location of BOWERS phone. Ultimately, investigators were able to obtain the GPS location of BOWERS phone, 2983 Watermill Street, Building #9, Apartment #204, Columbus, Ohio (TARGET PREMISES). Further investigation revealed the lease holder of this apartment is Aaliyah Walker (B/F; 07/18/1994). Additionally, investigators were able to confirm through call detail records that Walker and BOWERS have been in communication in the past. The same Chevrolet Malibu referenced above was observed parked in front of the residence. Therefore, USMS approached

6

the residence and Walker answered the door and through nonverbal communication acknowledged that BOWERS was inside. At that time, BOWERS was observed at the top of the stairs, advised USMS he needed to get clothing, came downstairs, and ultimately taken into custody at that time. Upon searching BOWERS incident to arrest, investigators located the following on BOWERS person: inside his left front pants pocket a plastic baggie, weighing approximately 33 grams, containing a white powdered substance was seized; two pink pills inside his hand; a small plastic bag, weighing approximately 2 grams, containing a white substance was located inside his coin pocket, and $1,754 in U.S. currency was located in his front right pocket. Upon investigators locating the suspected narcotics BOWERS stated the pills were his ecstasy but denied the pants were his. At that time, USMS secured the residence and S/A Penfield obtained a Federal Search warrant for the apartment (Docket Number 2:23MJ130) and the Chevrolet Malibu (Docket Number 2:23MJ131) referenced that was parked outside the apartment.

18. S/A Penfield and TFOs from the Columbus I Field Office executed both search warrants. A search of the vehicle yielded one (1) 9mm round of CCI ammunition and a Smith and Wesson 8 round 9mm pistol magazine. A search of the apartment yielded the following: a blue Apple iPhone with clear blue case (**TARGET TELEPHONE**); Israel Weapon Industries, model Desert Eagle, 9mm pistol bearing serial number 38313112 loaded with 14 rounds of ammunition in the attached extended magazine; one baggie containing 1 gram of suspected marijuana; and a Heritage, model Rough Rider, .22 caliber revolver bearing serial number V61763. Ms. Walker was provided a copy of both search warrant inventory sheets regarding all items of evidence seized. At that time, Walker stated she was unaware of any firearms being inside the residence and denied owning or possessing such firearms.

## TARGET TELEPHONE RELATIONSHIP TO ILLEGAL ACTIVITY

19. The **TARGET TELEPHONE** identified in this requested search warrant was recovered from inside the residence where BOWERS was arrested.

20. The **TARGET TELEPHONE** is currently in the lawful possession of the ATF. While ATF might already have all necessary authority to examine the **TARGET TELEPHONE**, I seek this additional warrant out of an abundance of caution to be certain that an examination of the **TARGET TELEPHONE** will comply with the Fourth Amendment and other applicable laws.

21. I know through training and experience that cellular telephone devices are commonly used to access social media such as the Instagram, Facebook, or SnapChat to receive and exchange messages related to unlawful acts.

22. **TARGET TELEPHONE's Relationship to the violation of 18 U.S.C. § 922(g)(1):** As indicated above, a result of the search warrant executed at the residence where BOWERS was arrested, there were two firearms located within the apartment. Additionally, the lease holder denied owning and/or possessing any firearms. I know through my training and experience, and in speaking with other law-enforcement officers, that cellular telephone devices are commonly used to arrange unlawful transactions—including the unlawful sale of firearms to prohibited persons; to facilitate those straw purchases through the exchange of photographs of the relevant firearms and proposed terms of payment; and to assist potential straw purchasers and intended recipients in meeting up with one another through use of the phone's GPS and mapping software and applications. Moreover, I know through training and experience that individuals who illegally possess firearms often keep information on their cellular phones related to the

8

firearms, including communications regarding the firearms, information regarding the purchase and possession of the firearms, and picture(s) of the firearms.

23. **TARGET TELEPHONE's relationship to 21 U.S.C. § 841(a):** As referenced above in paragraph #17, on February 28, 2023, several narcotics were seized from BOWERS person and following the execution of the search warrant at the residence of 2983 Watermill Street, Building #9, Apartment #204, where BOWERS was arrested. Your Affiant is aware from training and experience that narcotics traffickers often use their cellular phones to store information related to the trafficking of narcotics, as well as communicate regarding their narcotics trafficking, including to set up drug deals.

24. In my training and experience, I know that the **TARGET TELEPHONE** has been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the **TARGET TELEPHONE** first came into the ATF's possession. When the **TARGET TELEPHONE** was seized, investigators powered them off or placed them into airplane mode to maintain their integrity.

25. Moreover, relevant here, Your Affiant knows individuals commonly use their cell phones to send text messages, voice messages, video messages and other chat based or social media platforms to discuss and plan their criminal activities. Call logs, text logs, and content records showing such an arrangement are likely to still be on the **TARGET TELEPHONE**. Additionally, Your Affiant knows that individuals take pictures of their firearms, narcotics, and illegally derived proceeds, and those pictures can be stored on the devices. In addition, cellular telephones are commonly in the physical possession of owners which would yield information as to where the conspirators may be meeting, secreting the firearms into vehicles, acquiring firearms for the purpose of diversion to the criminal market, or other actions in furtherance of the

conspiracy. Location data stored on the **TARGET TELEPHONE** is likely to show where the target cellular telephone was located during times of service, and that information, combined with other records, may display a time that all identified telephone numbers for co-conspirators were in the same general area of one another. The information sought in this warrant will further establish the patterns of those involved in the conspiracy.

## TECHNICAL TERMS

26. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

10

    b. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0–255, separated by periods (e.g., 121.56.97.178). Every computer or cellular telephone (beyond 2G technology) attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or cellular telephone may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    c. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

27. Based on my training, experience, and research, I know that the **TARGET TELEPHONE** has capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and personal digital assistant ("PDA"). In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

28. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

11

Internet are typically stored for some period of time on the **TARGET TELEPHONE**. This information can sometimes be recovered with forensics tools.

29. *Forensic evidence.* As further described in Attachment A, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET TELEPHONE** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET TELEPHONE** because data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    a. Forensic evidence on a device can also indicate who has used or controlled the **TARGET TELEPHONE**. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    c. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer/cellular telephone is evidence may depend on other information stored on the computer and the application of knowledge about how a computer/cellular

telephone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

30. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET TELEPHONE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **TARGET TELEPHONE** to human inspection to determine whether it is evidence described by the warrant.

31. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

32. Based on my knowledge, training, experience, and the investigation to date, I further submit that there is probable cause to believe that the property to be searched as described contains evidence, as described in Attachment A, of a violation of the following federal laws: Title 18, United States Code Section 922(g)(1), Felon in Possession of a Firearm and Title 21, United States Code Section 841(a)(1), Possession With Intent to Distribute Controlled Substances.

33. Based on the foregoing, I request that the Court issue the proposed search warrant under Federal Rule of Criminal Procedure 41 to search the **TARGET TELEPHONE** as described and to seize those items set forth in Attachment A which constitute evidence, fruits, and instrumentalities of a violation(s) of the TARGET OFFENSES.

Respectfully submitted,

*Janna Penfield*
Janna Penfield, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me
on this 6th day of March 2023.

*Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

14

## ATTACHMENT A

1. All records and information on the **TARGET TELEPHONE** described in the Affidavit in support that constitutes evidence of a violation of violation(s) of the TARGET OFFENSES (see attached Affidavit) involving Sharod Radell BOWERS named in the Affidavit in support of this warrant application, since February 2022, to present, including but not limited to the following:

   a. lists of contacts and related identifying information;

   b. photographs;

   c. internet history;

   d. GPS data;

   e. Text messages or messages stored in other messaging platforms;

   f. Data stored on the **TARGET TELEPHONE** through social media platforms to include, Facebook, Instagram, Snapchat, and other unnamed platforms similar in nature;

   g. any information related to sources of firearms (including names, addresses, phone numbers, or any other identifying information);

   h. any information related to destination sources of firearms (including names, addresses, phone numbers, or any other identifying information);

   i. any information recording the schedule or travel from 2023 to the present related to the user(s) of the **TARGET TELEPHONE**;

   j. all bank records, checks, credit card bills, account information, and other financial records;

   k. Stored electronic mail messages;

2. Evidence of user attribution showing who used or owned the **TARGET TELEPHONE** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history; and

3. Records evidencing the use of the Internet Protocol address to communicate with unnamed servers, including:

   a. records of Internet Protocol addresses used; and

   b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

4. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.